**John A. BETTS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Misc. No. S–89–43.**

United States District Court, C.D. Illinois, Springfield Division.

Aug. 8, 1991.

Kenneth A. Kozel, LaSalle, Ill., for petitioner.

Asst. U.S. Atty. Patrick Kelley, Springfield, Ill., for respondent.

## OPINION

RICHARD MILLS, District Judge:

Attorney John A. Betts, the Petitioner here, asks for a certificate of innocence pursuant to 28 U.S.C. § 2513.

His petition is denied.

A brief review:

Betts is an attorney practicing in Marseilles, Illinois. This "gothic tale" began when Betts, represented by Attorney Kenneth A. Kozel, commenced a civil rights action before Chief Judge Baker in the Danville Division. During the course of his representation of Betts, Kozel failed to appear at a scheduled hearing in Danville, appeared forty minutes late for a second hearing, and failed to apply for admission to the Central District prior to appearing on behalf of Betts. These transgressions resulted in Judge Baker ordering Kozel to appear and show cause why he should not be held in criminal contempt of court. Kozel's case was transferred to this Court for trial.

At this point, Betts and Kozel switched roles with Betts now appearing as Kozel's counsel in the contempt matter. One of Betts' first actions was to file a motion to disqualify this Court from any further proceedings in the Kozel contempt case. On May 9, 1989, this Court heard arguments on the motion for disqualification and granted Betts leave to file a written memorandum of law in support of his motion.

On June 9, 1989, by docket entry, this Court entered an order setting the motion for disqualification for a final hearing on June 19, 1989. Notice of the hearing was sent to Betts and Kozel but neither appeared on the 19th. After hearing argument from the Government, the Court denied the motion for disqualification and, upon the Government's motion, issued arrest warrants for both Betts and Kozel. Betts surrendered to federal marshals on July 13 and was placed on bond. The usual bond conditions applied, including the condition that Betts appear as required at all future proceedings. (To avoid confusion between Betts' and Kozel's contempt proceedings, Betts' case was stayed pending resolution of Kozel's.) On September 6, 1989, Kozel was convicted of two counts of criminal contempt following a bench trial. See United States v. Kozel, 908 F.2d 205 (7th Cir.1990).

On November 7, 1989, this Court entered and mailed out an amended notice of contempt charges ordering Betts to appear on December 8, 1989, to show cause why he should not be held in civil contempt for his failure to appear on June 19. On December 8, Kozel appeared on behalf of Betts and indicated that Betts would not be making an appearance that day because he was on the lam from a Ford County, Illinois, arrest warrant. Betts' hearing was rescheduled for December 28 and written notice was sent to both Kozel and Betts. The notice addressed to Betts was returned with a hand-printed notation on the unopened envelope marked "Return to Sender." Also on December 8 the Court issued an amended notice of contempt identifying the contempt as criminal rather than civil.

On December 28, 1989, Kozel appeared but—once again—Betts was a no show. The Court issued a warrant for Betts' arrest and on January 18, 1990, he was apprehended by the United States Marshal's Service. Betts was transferred to the Metropolitan Correctional Center in Chicago and produced before this Court for trial on January 24. Following a bench trial, Betts was convicted of criminal contempt of court and sentenced to three months' imprisonment with all but the first fifteen days suspended. Further, Betts received six months' supervised release and was ordered to pay a special assessment of $25. The Court denied Betts' motion to stay execution of the sentence pending appeal and Betts served a total of fifteen days' imprisonment, with the first ten being cred-

ited for time Betts spent in custody following his apprehension by the federal marshals.

On appeal, Betts raised numerous challenges to his conviction. The majority were rejected as meritless. However, the court of appeals held that a reasonable trier of fact could not have found that the evidence established, beyond a reasonable doubt, that Betts was guilty of criminal contempt for failing to appear at the June 19, 1989, hearing on his second motion to disqualify. The court based its holding upon its belief that the docket entry order setting the June 19 hearing "flunked the 'reasonable specificity' test for disobeyed court orders in federal prosecutions for criminal contempt." *In the Matter of John A. Betts*, 927 F.2d 983, 987 (7th Cir.1991). The court reasoned that because the docket entry order did not specifically require Betts' *personal* appearance it was ambiguous and thus precluded the essential finding in a criminal contempt proceeding of wilfulness. *Id.* (citing *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir.1974)). Because of the potential collateral consequences from a criminal contempt conviction, the circuit court then reversed Betts' conviction and vacated his sentence. *Id.* at 988.

Betts now seeks a *certificate of innocence* pursuant to § 2513. A certificate of innocence is a prerequisite to a suit in the court of claims against the United States for unjust imprisonment pursuant to 28 U.S.C. § 1495.

■ We begin with the language of § 2513:

#### Unjust Conviction and Imprisonment

(a) Any person suing under section 1495 of this title must allege and prove that:
(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and

unjust conviction and (2) he did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge, constituted no offense against the United States, or any State, Territory or the District of Columbia and he did not by misconduct or neglect cause or bring about his own prosecution.

To obtain a certificate of innocence, a petitioner must go beyond merely showing that he was found not guilty of an offense. *Rigsbee v. United States*, 204 F.2d 70, 72 (D.C.Cir.1953). He must also show that the trial judge thought he did not commit the acts charged, or that if he did, his acts were not criminal. *Id.* The decision to issue a certificate of innocence is committed to the sound discretion of the trial court. *United States v. Keegan*, 71 F.Supp. 623, 636 (S.D.N.Y.1947).

■ The court of appeals' decision establishes that a reasonable trier of fact could not have found that Betts' conduct constituted criminal contempt of court. *Betts*, 927 F.2d at 986. Therefore, Betts meets the first requirement of § 2513 in that he is factually innocent of the offense for which he was imprisoned.

In response to his petition, the Government contends that Betts brought about his prosecution through his own neglect and misconduct and thus is not entitled to a certificate of innocence. Betts anticipates this argument and contends that "[a]ny such claim that BETTS caused his own prosecution by his own misconduct or neglect is nothing short of ludicrous and without any legal foundation." In support of this statement, Betts argues that the defense of a prosecution having been brought about by the misconduct or neglect of the petitioner is "confined to those instances where the trial court decision is reversed because of technical defects such as failure to read someone their Miranda rights or problems with search and seizure." Betts, not surprisingly, fails to cite any authority for his novel proposition.

A certificate of innocence is limited to the case where a petitioner can establish his factual innocence. *Rigsbee*, 204 F.2d at

72. Reversal of a conviction based upon failure to read an individual his Miranda warnings or an unconstitutional search does not establish *factual* innocence.

For example, consider the situation of a drug trafficker prosecuted for possession of cocaine with intent to distribute. Defendant moves before trial to suppress the cocaine which he alleges was unconstitutionally seized by the Drug Enforcement Administration. The trial court denies defendant's motion and he is convicted. Upon appeal, the circuit court reverses the conviction based upon the unconstitutional search and orders the evidence suppressed. The defendant could not obtain a certificate of innocence because of his inability to establish factual innocence—not because he brought about his own prosecution through his neglect or misconduct. Betts' argument to the contrary is completely unsupportable.

Betts' second argument in support of his assertion that he was not responsible for bringing about his own prosecution through his neglect or misconduct is that "[t]he 7th Circuit Court of Appeals could not have made it more clear: Betts was not guilty of any misconduct." This was not the holding of the reviewing court. The court of appeals held that Betts did not commit the offense of criminal contempt of court because a reasonable trier of fact could not have concluded that the order which Betts allegedly violated was reasonably specific in ordering Betts' personal appearance at the June 19 hearing. Commenting upon Betts' conduct, the court opined:

> We are certain that the antics of Betts and Kozel tried the patience of the court.... At a time when courts have to engage in judicial "triage" to accommodate the frightening number of drug and other cases clogging their dockets, Betts and Kozel papered several courts (including this one) with numerous filings that distracted us from more pressing matters. This, however, is not a punishable crime. Given the fact the June 5, 1989, [sic] docket order did not state that the presence of Betts was *de rigueur,* Betts'

conviction and resulting sentence cannot stand.

*Betts,* 927 F.2d 983, 987–88 (7th Cir.1991).

Betts clearly brought about his own prosecution through his own neglect and misconduct. Betts waited until the last moment to inform the Court that it was simply not convenient for him to appear at a scheduled hearing. After being apprehended, Betts violated a condition of his bond and attempted to avoid prosecution because of an outstanding arrest warrant issued by an Illinois court. In fact, it is uncertain that Betts would ever have appeared had he not been apprehended by the federal marshals.

This Court concludes that, based upon the entire record in this case and Betts' course of conduct, he was at least partially responsible for bringing about his prosecution through his own neglect and misconduct. Therefore, Betts is not entitled to a certificate of innocence pursuant to § 2513. His petition is denied.

*Ergo,* Petitioner's petition for a certificate of innocence is DENIED.